This call for argument is Gene v. Castleman, and so we're going to do it in a two-way scenario. We're going to split the time. So if that's your problem. And good morning, your honors. Middy Salyer on behalf of Chair Gene and S.I. Resources. Can you speak just a little bit louder, please? Yes, sir. Thank you. Mm-hmm. Quickly, the main central issues are whether or not an order for tax deed can be collaterally challenged as void. And the appellee maintains it cannot. It's only going to be avoidable. And then the other central issue for the court today is standing. But just quickly, and just take a minute to illustrate why that is the two central issues. It's because S.I. Resources had filed a 214-01 petition. And it's important to note the record here for the purposes of this review that the count one was solely pursuant to 214-01 in due process. Okay, so S.I. Resources count one did not have a 2245-4 contained in that count one petition to void. And the count two then was the alternative general 214-01 in connection with the fraud count 2245-3. And then conversely, Jerry Jean had a 214-01F count one petition in connection with a 2245-4 of the property tax code. And then also with that count one petition to void, a due process allegation to void. And then an alternative standard count two pursuant to 2245-3. And notably here, and this leads into the voidable issue, Jerry Jean actually had on his count two a standard 214-01 petition alongside the 2245-4. And why is that important? It's very important because the voidable issue in collateral tax deed proceedings in this state is across the board, to be frank. You know, there are the tax purchasers who argue that it can only be voidable. And then there are the two controlling cases, Devon Bank D.G. Enterprises from the Illinois Supreme Court, Devon Bank out of the First District Appellate Court, that hold that that isn't true, that 2245-4 codified the due process constitutional right to notice. So with that in mind, just quickly into my analysis, it's mindful for everyone to keep in mind that prior to the 1990 amendments, 2245-4 wasn't even an option. And you do have cases like New York Guardian, which was prior to the 1990 amendments, where in New York Guardian they allowed a collateral attack. And although 2245-4 wasn't even in the property tax code, the court relied on its equitable power on that particular case. And because they said that it's absolutely paramount that the owner of a property receive notices. And that means, of course, they have to be attempted, not actual receipt. But those notices at least have to be attempted by the tax purchaser. So the legislator codified 2245 in light of the New York Guardian and then in light of the Conga case, which is what the Devon Bank relied upon because, again, New York Guardian and Conga didn't have the statutorily prescribed 2245-4. So we have the legislation come in in the 1990 amendments. And that legislation is the key because it says that relief from an order for tax deed may be had under 214-01 in the same manner and the same extent as it may be had under 214-01 with respect to other judgments and other proceedings. But that plainly means that 214-01F is operable. The appellees and the circuit court of Washington County contend that it's not, yet because once the collector retains interim jurisdiction at the order confirming the sale over the property, it's immaterial of the tax purchaser in a subsequent tax deed proceeding. And why I say subsequent is it's because the tax purchaser files the petition in the same proceeding that the order confirming the judgment and sale was entered because that jurisdiction, interim jurisdiction, is in fact continued to that tax court that's the subject matter jurisdiction. However, the argument here and the voidable issue for the court is can a tax purchaser just ignore 2210, 2215, 2225, make no party publication, and then have the tax purchaser run under the cover of, I'm so sorry, it's voidable. You were limited to two years. It doesn't matter that you didn't get notice that we were taking your property. Because it's important to note that at the order confirming the sale, there are no summons. It just goes to whatever's in the public record as the last known tax assessee, certified milling, and then a party publication notice. And that alone is enough statutorily to confer the jurisdiction of the end rent. So it's important to note that the homeowner is never sought out in their original order for sale. So 21401 has the four codified grounds. And we feel as though Devon Bank and DG Enterprises is controlling. Now, Devon Bank has been around for a little while. There was a 2009 case, and that's plain and simple. That was a timely 21401 petition, meaning that in fact 2245-4 and 21401-F were pleaded in Devon Bank, and the First District Appellate Court said the total failure of notice to ascertain the record owner rendered the order void, the order of the tax deed void. Well, subsequent thereto, you had DG Enterprises, a Third District Appellate Court case, where the tax purchasers appealed because the Appellate Court found that it was void. And the Supreme Court in DG said it wasn't void, but the distinguishing factor there is that the petitioner had filed a 21401 petition alongside the 2245-4 alleging it was void, but 2245-4 wasn't available to it because you hit two prong in 2245-4. And 2245-4 is that the owner wasn't named in the party publication, and the tax purchaser failed to make diligent inquiry in effort to serve the 2210-2230 notices. So, you know, they said it wasn't void, but the key factor is that the Illinois Supreme Court conducted a second-part analysis. The opinion sets forth a complete second-part due process analysis. So looking at the DG case, it would be hard-pressed to argue that an order for tax deed can never be void, such as the circuit court found here. Because clearly, the Illinois Supreme Court conducted the second-part due process analysis regardless of whether that particular petition had the availability of 2245-4 because they said they didn't. They said that they didn't meet that second prong of the party publication. So we rely, in the appellants before this court today, rely on Devon Bank and DG Enterprises. The Appellees have relied on Vulcan and Powles. Those are distinguishable. Those, again, like DG Enterprises, Powles from this district was an attack on the facial deficiencies of the notice, not whether a notice was actually attempted. So that's not applicable. And then, of course, in Vulcan, that was a 2245-3 fraud allegation and not prior. Vulcan was prior to the codification of 2245-4. And then, finally, Excalibur v. Rockman, which, you know, that case has been going on and on and on, and it still is. So I'll be just very particular with what I say here. But in Excalibur, the petitioner filed an ejectment action, and then this court reversed and remanded the Franklin County Circuit Court, because this court said that where you plead grounds, that in order for checks to be displayed, that, you know, you have a right to file a 214-01 petition. So in this particular case, you have a Washington County Circuit Court that first denied the motion to dismiss, and then it was asked to re-assign resources where the task registrars here, Castleman and Groom, solely filed a 619 motion to dismiss based on standing. So the May 23, 2017, order speaks to that, is whether or not standing was present, which my co-counsel will be handling here quickly on the standing issue, and then also that standing is not applicable if, in fact, an order is avoided. And then when Castleman and Groom filed their motion to reconsider, that all changed to their advancement of, it feels, a stated claim for which relief can be granted, a 2615 on the motion to reconsider. So in our briefing and in the record, you will see that we did object to that and, in fact, presented a motion to strike at the hearing on the motion to reconsider, to which, in the court's August 2017 order, he noted that he denied, because the objection was that Sherry Jean was prejudiced, obviously, because his 214-01 petition was dismissed. The motion to dismiss was granted. He filed a motion to reconsider, and then the task registrar came in and argued a completely different section of the Civil Code of Procedure, 615. So finally, Your Honors, I would like to say that it's important to note also that the Property Tax Code has to be read in primary materia. So you do have to take into consideration the whole scheme of the Property Tax Code and what those post-order provisions provide, such as 2280 and 2275. And 2280, obviously, sets forth that where an order is otherwise declared void, that the county collector shall direct the sale to be a salinaire. That's 2280A. And then, of course, 2280B is that if the order for tax deed is vacated, which is what Grimm and Kesselman are maintaining can only ever happen, then a 214-01 petitioner has to have money to file the 2280, to comply with 2280 in 90 days. So, in effect, what they're saying is that a tax purchaser can violate someone's due process rights as codified in 2245-4, and they're still going to have to pay the price for that when they file the 214-01 that 2280 comes into operation. And then, of course, there's 2275 that expressly would be rendered meaningless because it expressly says in 2275B that the only two things that are rendered void is if the taxes are paid in exempt. And that's 2245-1 and 2. If the taxes are paid in exempt, then it would make sense that the county collector would reimburse those funds because they were never delinquent in the first instance. But that, in close, Your Honor, due process demands that the notices must be reasonably calculated to apprise interested parties in the proceeding. And it's unequivocal that the legislator doesn't have the power to cramp our constitutional rights. And 2245 has been ruled constitutional, and it is because the due process is available and it expressly provides verbatim that you can operate 214-1F alongside with it. So on that issue, we would ask that you reverse the circuit court's order dismissing Jerry Jean and SI resources petition. And now, thank you.  I'm Amanda Moresi on behalf of the 214-1 petitioners in appellants in this case, and I will be addressing the issue of standing. Also at issue in this case is, in this appeal, is whether SI resources and Jean have standing to collaterally challenge the order for tax deed. The circuit court in these orders has restricted standing in Illinois to collaterally challenge, to require, though, that the part of the 214-1 petitioner who's collaterally challenging would have to have the ability to redeem and a current interest in the property. And that simply is not the status of standing law in Illinois, especially as it relates to tax deed proceedings. In Illinois, standing is extremely expansive. And this is set forth in the seminal case of Greer v. Illinois Housing Development Authority. And in this case, the court went through a test and denied the Illinois Housing Development Authority zone of interest argument regarding that. So the court found that, in Illinois, economic injuries are recognized as sufficient in order to have standing to bring collateral petitions or cases in Illinois. It also found that there has to be a three-fold test. An injury is distinct and palatable, that it is fairly traceable to the defendant's actions, and that it is substantially likely to be prevented or redressed by grant or relief. Also, Your Honor, the economic interest is in the outcome of the controversy. The essence of standing inquiry is not in the subject matter, per se, but whether the petitioner is entitled to have the court decide the merits of the case. In this case, both S.I. and Jean have the ability or are entitled to have this court decide the merits of the case. Also at issue is the Lincoln Title case. And this was a question of standing and asked whether a certain party is entitled to have the court decide the merits. And Lincoln Title, a title company who had no interest in the property, the court found was entitled to bring its 214-01 petition after those 30 days because it had an economic interest. The court found that it had a real interest in the action brought before the court and in its outcome. The purpose of standing is actual controversies and cannot be abstract or moot questions. Bonafide title or interest in the property was also expressed and cited by Lincoln in this court by Henry Hamilton County. In terms of S.I. standing, the case of Hamilton County is directly on point. In Hamilton County, a 214-01 petitioner purchased a fractional airship interest a year after the tax deed was granted or the order for tax deed was granted. In its analysis, Hamilton County distinguished the Southern Illinois v. Lowery case and also said that record notice of a tax deed is not an absolute bar. It said that somebody who has purchased a property after a tax deed has issued from the previous owner has the ability to go for and have this 214-01 proceeding heard. In Hamilton, the court reversed the circuit court's dismissal of the action without an evidentiary hearing. This case is similar to Hamilton. S.I.'s 214-01 petition specifically is similar to Hamilton because both involved a subsequent purchase. Hamilton purchased over a year and a half. In this case, S.I. Resources purchased from Jane less than 30 days after. Immediately thereafter, S.I. Resources was diligent in filing a 214-03 petition, which was ultimately brought before this court and found that S.I. Resources was not a party and could not have brought that 214-03. The diligence in filing after the recorded ownership was also noted by Hamilton County. Third, neither the grantor in Hamilton or Jane in this case had no knowledge of the tax sale proceedings. This was acknowledged by the circuit court regarding this. There is no dispute that Jane had no knowledge of this tax sale or the tax deed proceedings. It is the interest in the property, not the timing of the interest that is at issue. Further, in regarding Jane's standing, Jane had the right to redeem the property. The right to redeem the property is an interest sufficient to bring a 214-01 petition, as was stated in Miller v. Cook. There is no doubt about that. The previous owner is also in privity with S.I. Resources. I also want to address a case that we have brought up regarding a more recent case out of the First District Appellate Court. It is the Alliance Partners case, as was cited in our appellant briefing. In this case, the interveners were occupants of the property with no interest whatsoever. And the First District Appellate Court found that these occupants of the property had the ability to come in and intervene in these proceedings and challenge and file their own 214-01. Now, occupants obviously have no ownership interest in the property whatsoever and are not even entitled to redeem, but the First District Appellate Court found that they had standing. Also, Your Honor, I want to mention Excalibur v. Rockman, the 2014 case. In that case, similar to S.I. Resources' position, Excalibur has purchased its interest over 10 years after the order for tax deed had entered. So we have a substantial, and they were allowed, this court reversed and remanded and directed Excalibur to file the 214-01. Now, that being stated, there has been an allegation of due diligence that has been brought up. And now, while this was set up for the first time on the notion to reconsider, and the circuit court ultimately found it unpersuasive, these due diligence were all pleaded in the 214-01 petitions, both by Jane and by S.I. Resources. And those citations are C-514 through 514 in paragraphs 39 through 41 of S.I.'s 214-01 petition, and it was also stated on C-769 and 770 that the arguments were not persuasive by the circuit court, and Jane's were C-70 were the pleading requirements. So, Your Honor, we would request that this court find that S.I. Resources and Jane both have standing to bring these 214-01 petitions under Illinois law, which, again, is expansive and where the interest, the economic interest, is clear and on the face. Both S.I. and Jane have interests in the outcome of this litigation and would be harmed if this order for tax deed is not voided or vacated. Thank you. Thank you, counsel. Counsel? Good morning. I represent Castleman and Groom. We're not saying that a tax deed can never be declared void. That is not what we're saying. Clearly, 2285 specifically says that a tax deed can be absolutely void in a scenario where you don't file and record your tax deed within one year. So we've never gotten up and said that you can't have a void tax deed. But what we have here in count one is an allegation that the tax deed is void because of allegations of lack of due process and fraud that occurred after the court acquired jurisdiction. The Vulcan Materials case, 1983 Supreme Court, clearly indicates fraud that occurs after the property has been sold at best makes these tax deed orders voidable, not void. And that's the exact scenario we have here. All of their allegations of due process or fraud, whatever you want to call it, involve allegations that occurred after the tax sale occurred. So at best, the allegation is that they're voidable. Count one speaks only to declaring this void. So count one fails as a matter of law because the allegations can never rise to the level of creating a void tax deed. I acknowledge that under certain circumstances, it could create a voidable order. I agree with that. And that's why we have to go to the count two. But first, let me talk about what I described and what the court agreed was outer wire cases were perhaps dictum. In the Devin case, the Devin Bank case, first of all, no one challenged the issue of standing. And that is the whole point of the voidable analysis here is that standing is important when we're dealing with voidable issues. But in the Devin Bank case, the critical point there is, number one, standing was not raised. The other important point was they were dealing with the issue of a bona fide purchaser with or without notice after the fact. So it involved a completely different portion of 1401. The other important point, and I think this is the common thread on these outer wire cases, is where they're talking about a void deed, they're talking about a complete absence of notice, a total failure of notice. And that isn't what we have here. It's in the record. It's undisputed that party gene was listed in the publication. Now, the certified mail was returned undeliverable. I acknowledge that. That's part of the record. That was part of the record when the trial court granted the tax deed. But the point is, and the distinguishing factor is, number one, is that we don't have a situation where there's a total lack of notice. The Devin Bank case dealt with a total lack of notice, and they found that to be void. In the Excalibur decision, and I'm not familiar with the subsequent procedural history of that, what I'm familiar with is this court's 2014 order, where, by the way, it was not a tax deed case when it came to the court in 2014. And respectfully, I believe it was indicative that this court cited the Devin Bank case. And again, within that Excalibur site, it was talking about a total failure of notice. And again, we do not have that here. The other part of this is Devin Bank basically has turned 100 years of jurisprudence on its head to now say that we have in personam jurisdiction issues. And it flies in the face of numerous court cases, including this case, this court's S.I.V. Powers case, 2010 case, where a tax deed is clearly an in rem proceeding. The D.G. case, the Illinois Supreme Court's case, I agree they did an analysis of due process. But make no mistake, the Illinois Supreme Court did not rule that a tax deed was void in that case. It quite frankly sidestepped the issue of void voidable. It did not address the Devin Bank case, even though the dissent in the lower appellate court, which was somewhat adopted by the Illinois Supreme Court, did address that issue. So for those reasons, the count one fails because the tax deed can't be void under this scenario. We go to the second count, count two, is where they're talking about setting aside a tax deed because it's voidable. And I agree we're talking in the right framework at that point. But the statutory construction here is very important. There are only a couple ways to challenge and set aside a tax deed as being voidable. One is a direct appeal, which didn't happen here. Number two is filing a 2-1203 motion, which, as I tried to do here in this appellate court, said you can't because you weren't a party to the underlying litigation in the plain language of 1203 says it's got to be a party. So what we're left with is a 1401 motion. That's the only vehicle with which they can declare in this fact scenario the tax deed voidable. It's further limited under 1401 through 22-45. There are four scenarios there, two of which don't apply, where there is proof that the taxes were paid prior to the sale. And respectfully, I was thinking in writing it down as we got ready, that allegation, that 45-1, that isn't an issue here, talks about where there is proof that taxes were paid prior to the sale. That's a void issue. I would argue that if you bring a 45-1 case, that's an issue you can declare this thing void. I think that makes sense because, again, it's something that happened before the sale happened, where the problem proved that the property was exempt. Again, not an issue here, but I think 45-2 is a codification of the common law where you can declare a tax deed void because, again, it happened before the court acquired jurisdiction to make the sale. So that makes sense to me. 45-1 and 2 are other examples of where you can declare a tax deed void. We don't have those here. What we have is 45-3 and 45-4 under voidable. And let me talk about 45-4 first, if I may. 45-4, as counsel said, it's a two-part analysis. They've got to prove two things. One, they've got to have proof that a party, and in this case it would be either Gene or SI, a party with a recorded ownership or other recorded interest was not named in the required publication notice. It's undisputed that party Gene was listed in the publication notice. So Gene can't make a 45-4 claim because you have to prove both parts, and she got the publication. You switch to SI. Ask yourselves, how could SI receive publication when it was a complete stranger to the property at the time that you had to make the publications? So 45-4 fails on its face as a matter of law. There is no way that they can make that claim because of the publication problem. So what we're left with then at the end of the day is a 45-3 claim, which is proved by clear and convincing evidence of fraud and deception in acquiring the deed. Respectfully, that is, that's essentially a due process. There's an overlay there of due process concerns and codified those due process concerns under 45-3. The problem is standing at that point. Standing is an issue when you deal with avoidable order under 1401. The bottom line is that SI Resources was a complete stranger to the title until after the period of redemption, until after the tax deed was issued or executed by court order. So what we do is we go back to the precedent, Miller v. Cook, which is an 1890s case that says the right to bring suit to set aside a tax deed is confined to those that can show an interest as would have entitled them to redeem. And SI had no entitlement to redeem because they were an absolute stranger to this property, an absolute stranger to Jean by the deadline of redemption. And so the Miller v. Cook case controls respectfully the Hamilton County Court, the decision by this court in 1981, the Hamilton County case. What the court did was the case was remanded, but it was remanded with a specific directive by the Hamilton County Court. And what the Hamilton County Court said is there's another issue here. We have an issue of the fact that the person trying to set aside didn't have an interest at the time of redemption. And the Hamilton County Court specifically cited the Miller v. Cook case. So respectfully, the Hamilton County case didn't address the specific Miller v. Cook issue because it wasn't briefed. The court, though, raised it on its own and said, how in the world can a party that didn't have a redeemable interest that was a stranger to the property, how could they even fulfill the 1401 allegations as a matter of law? How can you prove due diligence in pursuing a remedy in the underlying case when you're a complete stranger to the case? You can't do it. And so it doesn't make any sense. The Lincoln County case, which counsel cited, also cites with approval to the Miller case. So I can see the Miller case was in the 1890s. I get that. But the courts here, the 5th District and the 3rd District most recently in 2013, have cited with approval to the Miller v. Cook proposition. The proposition that I argued, the proposition that the trial court agreed with, devoids or takes away any possibility of standing by S.I. resources. Quite frankly, Jerry Jean had, you know, look, had Jerry Jean not quick-claimed her interest away after the fact, she'd have standing here. She'd have standing. But she quick-claimed her interest. Apparently was told there was some issue with the tax deed process and chose to divest herself of all interest in the property whatsoever. So right now, as it stands right here, she has been paid good and valuable consideration for her interest in the property. And because she no longer has any interest whatsoever in the property, she no longer has standing. And for that, we cited the Luke Mortgage case, which is an Illinois Supreme Court case from 1998, the Gleason v. City of Marion case, Illinois Supreme Court from 1999, and the Countrywide case from 2015, which is a case that a bank released its lien and its interest in the property, and the court said, well, then you don't have any standing to pursue this. So for those reasons, Your Honor, Your Honors, we respectfully request that you affirm the trial court's decision. Thank you, Counsel. Counsel, rebuttal. Good morning, again, Your Honors. I'll be doing the rebuttal quickly. Mr. Slocum and the castaments first talk about 2285. 2285 is different than 2245. 2285 just addresses whether or not the owner and holder of the certificate finally took out and recorded a tax deed with one year. And if so, then the certificate and tax sale become void. In no way does 2285 allow for an order for tax deed to be void unless, in the rare occasion in which there is one case pending upstate and then there is the cert case where, because of their chronic delay, they actually divested the subject matter jurisdiction because they waited so long past that one year. So the cert case said the order for tax deed was void. But that's it. Vulcan Materials is distinguished because, again, Vulcan Materials was a 2245-3 and 2245-4. The due process codified in there wasn't even in the property tax code that was later on in the 1990 amendments. So the reliance on Vulcan is not applicable. Most importantly, and we are in strong disagreement with this, it's a flagrant misstatement. The Illinois Supreme Court did not sidestep the issue of due process. The one prior second analysis by the Illinois Supreme Court was only on due process. And I can't emphasize enough to this Court that the Illinois Supreme Court found in that case that the 214-01-F-2245-4 petitioner could not meet the two-prong analysis in 2245-4, but that did not stop our Supreme Court. They conducted an entire second part due process analysis, even though they couldn't meet 2245, that the tax purchaser hadn't served all the required due process notices. And in that analysis, they painstakingly but very succinctly wrote how many times those certified mails were attempted. They went through and they pointed out how many times the summons were attempted and how many times on those unsuccessful sheriff attempts after that did the sheriff send the requisite certified mail pursuant to 2210 and 15. And then they went further and they went into 2225 that has to be issued and signed by the clerk because it's not a notice from the tax purchaser. It's countersigned by the county clerks as an official notice from a governmental body. And they went in and they counted how many times those certified mails went out. And they said right there, all that was the due process. And their whole second part analysis in DG Enterprises, all without 2245-4 even being available. So it's just flagrantly wrong to say the Illinois Supreme Court sidestepped the issue of due process collaterally, notwithstanding 2245 not being applicable. The total failure of notices in this case isn't whether or not there was a total failure of notice of Jerry Jean. The focus in the 214-01 petitions and uncontested and admitted in the deposition testimony of record is that the councilman's, I think the word they used in that record is probably knew Evelyn Fair was dead. Evelyn Fair was the last known record owner in the grantor grantee index. Jerry Jean, your honors, was the last known tax assessee in the records of the treasurer's office. The estate of Evelyn Fair and Evelyn Fair was not in the party publication, either one. That's admitted. Okay, the estate of Evelyn Fair, no 2210 notice was ever attempted. The clerk didn't send any notice to the estate of Evelyn Fair at her last known record address. There was just flagrantly no attempt to even send notice to the estate, the heirs, unknown owners and occupants of Evelyn Fair. None of that even happened, and that's admitted. Distinguishable from that is that Jerry Jean, first of all, is a male, and Mr. Jean was not or he was in the party publication notice. Now, the argument there is that Jerry Jean's current serviceable address was in the ad valorem, or it was in the statements on the assessor's records. It was right there on the ad valorem reports. They list out who's getting all the mineral interest, and right there was his serviceable address. And the argument there is they violated his due process rights because that was on the public records, readily ascertainable, and they just ignored it. They sent it to whatever address the treasurer printed on the certificate of purchase and stopped right there. They didn't make any other attempt to serve Jerry Jean, and it's undisputed that he didn't receive those attempted notices, that one attempt from the sheriff and the one attempt. Next, Your Honor, Devon Bank did not involve a BFP, and again, in Devon Bank, there was a total failure notice, just like this case, with Evelyn Fair, who was the last known record owner, who was passed away. The tax purchasers admit they knew it, and they didn't send any notice, and they have no excuse or explanation as to why the state of Evelyn Fair was not in the party publication, let alone just the name Evelyn Fair. That's not even in the party publication. As to the issue of standing, Your Honor, the May 23, 2017 order, Judge M.G., excuse me, the Washington County Circuit Court even noted the fact that because we, the petitioners, had pleaded, there was a privity between SI and Jerry Jean, that even in the May 23rd order, the court noted that there could be a relationship, because it was so close to that order directing the issuance of tax leave, that there could be a relationship between SI Resources and Jerry Jean, that they were relying on each other because of the privity arguments, and I just want to point that out, because SI Resources was not a seen stranger in title when they filed their 214-1 petition. They have a quick claim deed to the property, so they can't be construed as a stranger of title. Conversely, in the Lincoln title case, arguably, it would be noted that a title company would be a stranger in title, but yet they were found to have standing by the third district appellate court to collaterally challenge, and this is all premised on that, your honors, the standing is very liberal in the state of Illinois, and finally, my co-counsel touched upon it, but I just want to close with the first district appellate court, the alliance case, which we cited in our briefing, your honors, an occupant of a property cannot go in and redeem, they have no standing to do so, but clearly an occupant with no standing to redeem can file a 214-1 petition, and that's the alliance case, May 16, 2017 case we cited, and the reason why for that is, is that the standing is expansive, and as long as there's an economic interest, it's not contingent, there's not a two-pronged standing analysis in the state of Illinois, you don't have to have the right to redeem plus an ownership in the property, that isn't true, it's liberal, and it can be reduced down to, as the Illinois Supreme Court did in Greer, to any interest, it can be any economic interest, it can be any interest in the subject matter of the litigation, and both SI and Mr. Gene have standing to collaterally attack the tax seat, in particular where I want to close with account one, is that, your honors, it's just entirely false that the state and our legislator made a comprehensive property tax code, and just said that it's NREM jurisdiction, and the bottom line is, in this state, the Illinois Constitution and our U.S. Constitution require both subject matter and personal jurisdiction, not just one, so we would ask for, your honors, to reverse the circuit court's grant of the 2615 motion first presented by Grimm and Castleman in their motion to reconsider, and reverse the grant of their 2619 motion for standing, motion to dismiss from May 3rd as well, as to Jerry Gene, and to uphold the circuit court's denial of the motion to dismiss SI resources petition. Thank you. Thank you, counsel. I appreciate the briefest arguments, counsel, to take this case under advisement.